# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

|  |  |  |
|---|---|---|
| IN THE MATTER OF THE<br>EXTRADITION OF TOMÁŠ ČERVENKA | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 16-mj-5025-KGS<br>SEALED |

## CERTIFICATION OF EXTRADITABILITY AND ORDER OF COMMITMENT

This matter comes before the court upon the request of the United States of America, acting on behalf of the government of the Czech Republic, for an order certifying the extradition of Tomáš Červenka to the Czech Republic pursuant to the Extradition Treaty between the United States and Czechoslovakia, signed July 2, 1925; the Supplementary Treaty between the United States and the Czech Republic, signed April 29, 1935; the Second Supplementary Treaty on Extradition between the United States and the Czech Republic, signed May 16, 2006 (collectively "the treaty");[1] and pursuant to 18 U.S.C. § 3184. The government of the Czech Republic seeks extradition of Mr. Červenka in conjunction with convictions for fraud in violation of Section 250(1)(4) of the Penal Code of 1961 and fraud on a creditor in violation of Section 256(1)(a)(3) of the Penal Code of 1961. On May 2, 2017, the court held a formal extradition proceeding. After careful review of the parties' briefs and considering arguments made during the hearing, the court finds that the government's request for a certificate of extraditability should be granted.

---

[1] *See generally* Treaties, ECF No. 1-1.

I. **Findings of Fact**[2]

On December 1, 2003, Mr. Červenka was convicted *in absentia* by the Regional Court in České Budějovice, branch in Tábor ("the Tábor court"), in conjunction with the Resolution of the High Court in Prague, judgment dated May 18, 2004. Mr. Červenka was convicted of fraud in violation of § 250(1)(4) and causing harm to a creditor in violation of Czech Republic Criminal Code § 256(1)(a)(3), following a trial *in absentia*. During the time of Mr. Červenka's trial, sentencing, and subsequent appeals, he had absented himself from the Czech Republic and was residing in the United States. On June 24, 2014, the Tábor court issued an order for Mr. Červenka's arrest.

There is an extradition treaty in force between the United States and the Czech Republic. Article II of the Second Supplementary Treaty on Extradition between the United States and the Czech Republic of May 16, 2006, provides that a crime or offense is an extraditable offense if it is punishable under the laws of the requesting and requested states by deprivation of liberty for a maximum period of more than one year or by a more severe penalty, commonly known as dual criminality. Article II further provides that where the request is for the enforcement of the sentence of the person convicted of an extraditable crime or offense, the remaining sentence to be served must be at least four months. Mr. Červenka was sentenced to a term of imprisonment of six years and six months. The analogous United States statutes discussed below similarly carry maximum penalties exceeding a year of incarceration.

Pursuant to the treaty, the Government of the Czech Republic submitted to the Government of the United States a formal request for the extradition of Mr. Červenka, a citizen of the Czech Republic. On October 4, 2016, the United States filed an initial complaint for the

---
[2] The following facts are established by evidence submitted by the government or by the parties' Stipulations (ECF No. 20). Mr. Červenka has not submitted any evidence on his own behalf.

2

extradition of Mr. Červenka at the request of the Government of the Czech Republic pursuant to the extradition treaty, and on October 5, 2016, this court issued a warrant for his arrest. Pending now before the court is the government's request for a certificate of extradition.

II. **Conclusions of Law**

An extradition certification is in order where: (1) the judicial officer is authorized to conduct the extradition proceeding; (2) the court has jurisdiction over the fugitive; (3) the applicable treaty is in full force and effect; (4) there is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought; and (5) the crimes for which surrender is requested are covered by the applicable treaty.[3]

To that end, the parties have stipulated to the first three enumerated findings below,[4] and the court separately makes the fourth and fifth enumerated findings below:

**1. The undersigned is a judicial officer authorized under 18 U.S.C. § 3184 to conduct an extradition hearing.**

**2. The court has personal jurisdiction over Mr. Červenka and subject-matter jurisdiction over this action.**

**3. There is currently in force an extradition treaty between the Government of the United States and the Government of the Czech Republic.**

**4. There is sufficient evidence to support a finding of probable cause as to each charge for which extradition is sought.**

---

[3] *Smith v. United States*, 82 F.3d 964, 964 (10th Cir. 1996) (citing *Fernandez v. Phillips*, 268 U.S. 311, 312 (1925)). When considering the requirements for a certificate of international extradition, courts generally consider the issue of whether the alleged crimes are covered by the treaty before considering whether probable cause exists. However, because the court's conclusion regarding probable cause bears on the issue of whether the crimes are covered by the treaty, the court addresses probable cause first.

[4] *See* Tr. of May 2 hr'g at 2:14-5:18; Stipulations, ECF No. 20.

Although the parties' briefs focus on the issue of dual criminality, during the extradition hearing, Mr. Červenka's counsel stated that Mr. Červenka did not stipulate to the existence of probable cause. At the hearing, counsel characterized the dispute as one regarding "the validity of the underlying warrant based on the nature of the hearings and the process that's occurring in the Czech Republic."[5] Although, Mr. Červenka briefed that issue in conjunction with the court's decision regarding detention, he did not raise this issue in the brief presently before the court, and he did not elaborate on it during the hearing. Nevertheless, because Mr. Červenka's brief raises an issue regarding the sufficiency of the evidence and because Mr. Červenka does not stipulate to probable cause, the court must determine whether there is probable cause as to the crimes for which the Czech Republic seeks extradition. The court will not, however, address procedural issues regarding Mr. Červenka's attempts to appeal or set aside the judgment, as those are not matters presently before the court.

Generally, when a foreign court has entered a judgment of conviction as to an extraditee, "the court may deem probable cause established."[6] However, when an extraditee is convicted *in absentia*, the conviction alone is generally insufficient to meet the probable-cause requirement.[7]

---

[5] Tr. of May 2 hr'g at 4:13-17.

[6] *In re Extradition of Swierzbinski*, No. 09-8136-JPO, 2010 WL 750240, at *4 (D. Kan. Mar. 2, 2010) (citing *Sidali v. INS*, 107 F.3d 191, 196 (3d Cir. 1997) and *Spatola v. United States*, 925 F.2d 615, 618 (2d Cir. 1991) (holding that when an extradittee has been convicted, there is no need for an independent determination of probable cause because guilt is an adjudicated fact)); *see also Haxhiaj v. Hackman*, 528 F.3d 282, 286 (4th Cir. 2008).

[7] *See, e.g., Haxhiaj*, 28 F.3d at 286 (stating that the magistrate judge had "correctly found that a conviction *in absentia* is not sufficient by itself to meet the probable cause requirement of the Treaty and the Statute"); *In re Extradition of Ribaudo*, No. 00 CRIM.MISC.1PG, 2004 WL 213021, at *4 (S.D.N.Y. Feb. 3, 2004) (finding that under the treaty and in extradition proceedings generally, probable cause is established when a foreign court enters a judgment of conviction following a trial at which the extraditee was present, but when an extraditee is convicted *in absentia*, the conviction is merely a charge, and the court must make an independent determination of probable cause) (citing *Gallina v. Fraser*, 278 F.2d 77, 79 (2d Cir. 1960)); *United States v. Fernandez-Morris*, 99 F. Supp. 2d 1358, 1365 (S.D. Fla. 1999) (stating that a conviction *in absentia* was considered a charge for the purposes of a probable-cause analysis).

Under those circumstances, the court typically considers the conviction as a charge.[8] The court must therefore determine whether there is probable cause to believe Mr. Červenka committed the offenses, not whether the evidence is sufficient to justify his conviction.[9] "An extradition hearing is not a trial on the merits and does not require proof sufficient to satisfy the factfinder in a criminal trial."[10]

The crimes for which Mr. Červenka was convicted are found in the Czech Republic Penal Code. Under Section 250, fraud is defined in relevant part as:

> Whoever enriches himself or another person to the detriment of another person's property by misleading another person, or by taking advantage of another person's mistake or by withholding substantial facts, and thereby causing damage to another person's property which is not insignificant . . .[11]

Fraud on a creditor is defined in relevant part as:

> A person who frustrates, even partially, satisfaction of his creditor by: destroying, damaging, concealing, alienating, or making unusable part of his property; fabricating or recognizing a non-existing right or claim; representing his property as diminishing; or refusing, in proceedings before a court, to fulfill his legal duty to make a statement on his property, or on property of a legal entity for which he is authorized to act, or by providing false or grossly distorted facts in such a statement . . .[12]

Mr. Červenka disputes that there is evidence of his intent to defraud. The government has set forth the following evidence in support of the convictions:

---

[8] *See,* Article XI of the 1928 Treaty; *see also Fernandez-Morris*, 99 F. Supp. 2d at 1365.

[9] *Peters v. Egnor*, 888 F.2d 713, 717 (10th Cir. 1989).

[10] *Cheng Na-Yuet v. Hueston*, 734 F. Supp. 988, 995 (S.D. Fla. 1990).

[11] Wording of the Respective Criminal Law Provisions of the Czech Republic, at 24 ECF No. 1-1.

[12] *Id.*

5

In April 1996, Mr. Červenka and two other individuals formed the limited liability company DENI CZ.[13] All three were directors and authorized representatives of the company, with Mr. Červenka serving as the business manager.[14] DENI CZ was not profitable and "earned less than it consumed."[15] In response, Mr. Červenka and one of his business partners sought to raise money from individuals willing to pay.[16] In November 1996 and January 1997, Mr. Červenka and one of his business partners received payments of 700,000 Czech Crowns ("CZK") and 1,900,000 CZK from Luděk Švec.[17] Under the terms of the contract with Luděk Švec, the loan was to be repaid by December 31, 1997.[18] However, the trial court found that Luděk Švec was not informed about the economic situation of DENI CZ, which would have shown that the company was unable to repay the loan.[19] And although the loan was reportedly taken out for an expansion of business activities, the trial court noted that no such activities were reflected in the company's accounting books.[20]

Petr Zeman lent Mr. Červenka and one of his business partners 4,030,000 CZK between August 29, 1997 and December 9, 1997.[21] Mr. Zeman was informed that the money would be

---

[13] Resp. by the United States to Mem. of Law Filed by Extraditee at 7, ECF No. 26 (citing Record of the Case, at 30 ECF No. 1-1)

[14] *Id.* (citing Record of the Case, at 30 ECF No. 1-1).

[15] *Id.* (citing Record of the Case, at 31 ECF No. 1-1).

[16] *Id.* (citing Record of the Case, at 31 ECF No. 1-1).

[17] *Id.* (citing Record of the Case, at 31 ECF No. 1-1).

[18] *Id.* (citing Record of the Case, at 31 ECF No. 1-1).

[19] *Id.* (citing Record of the Case, at 31 ECF No. 1-1).

[20] *Id.* at 8 (citing Record of the Case, at 31 ECF No. 1-1).

[21] *Id.* (citing Record of the Case, at 31 ECF No. 1-1).

used to purchase goods and to fund the newly established company DENI PLUS, of which Mr. Zeman was promised to become a member.[22] Mr. Červenka never repaid the loan, and apparently failed to provide Mr. Zeman with information about DENI CZ's financial situation.[23]

In 1997, Jan Švec paid Mr. Červenka 1,200,000 CZK.[24] In return for the loan, Mr. Červenka had represented that the company was operating well, and he had failed to mention any financial problems.[25] The loan was to be repaid by December 31, 1997, but only 165,000 CZK of the loan was ever repaid.[26] In January 1998, Mr. Červenka told Luděk Švec that his loan could not be repaid.[27] Luděk Švec subsequently loaned Mr. Červenka an additional 400,000 CZK, which has not been repaid.[28] Mr. Červenka also informed Jan Švec that he could not settle the debt of 1,200,000 CZK, having declared the lack of readily available cash and liquid assets, but he promised to settle the debt as soon as his financial situation allowed or by March 31, 1998, at the latest.[29]

In addition to borrowing money, DENI CZ ordered and obtained various goods for resale from other businesses and individuals with a promise to reimburse each.[30] The trial court found

---

[22] *Id.* (citing Record of the Case, at 31 ECF No. 1-1).

[23] *Id.* (citing Record of the Case, at 31 ECF No. 1-1).

[24] *Id.* (citing Record of the Case, at 32, ECF No. 1-1).

[25] *Id.* (citing Record of the Case, at 32, ECF No. 1-1).

[26] *Id.* (citing Record of the Case, at 32, ECF No. 1-1).

[27] *Id.* (citing Record of the Case, at 32, ECF No. 1-1).

[28] *Id.* (citing Record of the Case, at 32 ECF No. 1-1).

[29] *Id.* at 8-9 (citing Record of the Case, at 32 ECF No. 1-1).

[30] *Id.* at 9 (citing Record of the Case, at 32 ECF No. 1-1).

that Mr. Červenka and his partner did so even as they knew that the company's economic circumstances would not allow them to pay for the goods.[31] The trial court stated,

> From the subjective point of view the court can say that Tomáš Červenka acted by 31st December 1997 at least with a potential intent, i.e. he knew that he could cause consequences presumed by the Criminal Code and if such consequences occurred he was aware of them at least. There is a direct intent in his acts which he committed after this date. This conclusion is based on the fact that Tomáš Červenka proceeded systematically to liquidate his own company at least from the beginning of 1998. If Tomáš Červenka (along with Pavel Kolář), acting in the capacity of the company's director, borrowed money or ordered and received goods and services after 1st January 1998, he did so with a clear intent to fail to pay for the goods and services and to fail to return the borrowed money and to enrich himself at the cost of third parties. Tomáš Červenka did not contribute the borrowed money to the company, he used it for his personal needs.[32]

The trial court found that Mr. Červenka and his business partner were aware of DENI CZ's large debt, were aware that the company's cost of operation was exceeding its profit, were the only individuals with unlimited access to the company's accounting records, and lied to business partners about the true situation of the company during negotiations.[33] The record also states that Mr. Červenka "used CZK 2,300,000 to settle a non-existent loan granted by himself out of the money withdrawn between 1st January 1998 and 30th June 1998 from accounts of DENI CZ, no. ******0257 and no. ******0267 kept in the Komerčni Banka, branch Tábor; he did so in spite of the fact that he knew that creditors' claims towards DENI CZ had not been settled."[34] The trial court also noted DENI CZ's dealings with Martin Mareš:

---

[31] *Id.* (citing Record of the Case, at 32 ECF No. 1-1).

[32] *Id.*

[33] *Id.* at 10 (citing Record of the Case, at 33 ECF No. 1-1).

[34] *Id.* (citing Record of the Case, at 33 ECF No. 1-1).

> Worth mentioning is also the reference to Martin Mareš account statements. This person bought goods worth more than CZK 2 million from DENI at the beginning of 1998. The statement of this account shows that at times when large amounts of money were withdrawn from the account of DENI CZ, approximately the same amounts were deposited in case in Mareš's account and immediately transferred back to DENI's account as payments for the purchased goods. The account statement also shows that payments to this account were made exclusively in cash, and if bank transfers were made they were made exclusively in favor of DENI CZ. The right of disposition to this account was held by Mr. Mareš and Mrs. Červenková, the mother of Tomáš Červenka.[35]

Mr. Červenka contends this conduct amounts to poor business decisions but that he never intended to defraud anybody. He points to evidence from the record that he invested his own funds into the failing company. He argues that the record contains no overt act of fraud or false statements but that the trial court imputed criminally culpable conduct to Mr. Červenka. His position amounts largely to a disagreement about whether the evidence is sufficient to demonstrate intent. However, it is not this court's role to determine whether DENI CZ was a legitimate business that was financially unsuccessful or a front for fraudulent activity. By "somewhat liberal construction," the court need only determine whether there is reasonable ground to believe Mr. Červenka committed the crimes for which he was ultimately convicted.[36]

The court agrees with the government that there is sufficient evidence to support a finding of probable cause that Mr. Červenka acted with criminal intent. At a minimum, the evidence suggests that Mr. Červenka presented DENI CZ as solvent to lenders to obtain loans at a time when he knew the company was insolvent. The record also suggests accounting practices—specifically that with the Luděk Švec loan and the activity regarding the transactions with Mr. Mareš—that would suggest an intent to hide the true nature of DENI CZ's finances and

---

[35] *Id.* (citing Record of the Case, at 35 ECF No. 1-1).

[36] *Smith*, 82 F.3d at 964.

business practices. The evidence cited above and the additional evidence presented in the government's filings[37] are sufficient to demonstrate there is probable cause as to the crimes for which extradition is sought, including probable cause as to Mr. Červenka's criminal intent.

5. **The crimes for which surrender is requested are covered by the applicable treaty.**

"The question of whether an offense is extraditable involves a determination of whether the offense is an extraditable crime under the particular treaty and whether the conduct is illegal in both countries."[38] Article 1 of the Treaty states:

> It is agreed that the United States and the Czech Republic shall, upon requisition duly made as herein provided, deliver up to justice any person, who may be charged with, or may have been convicted of any of the crimes of offenses specified in Article II of the present Treaty, and who shall be found within their respective territories; provided that such surrender shall take place only upon such evidence of criminality, as according to the laws of the place where the fugitive or person so charged shall be found, would justify his apprehension and commitment for trial if the crime or offense had been there committed.

"Dual criminality" is common to most extradition treaties, as is the case here. Under the doctrine of dual criminality, "a person shall not be extradited if the offense with which he is charged . . . is not punishable as a serious crime in both the requesting and requested states."[39] The Tenth Circuit has stated that 'the focus of dual criminality is not on how the crime is defined in the particular statutes the defendant is accused of violating; it is on the criminality of the defendant's alleged conduct."[40] In other words, "if the acts upon which the charges of the requesting country are based are also proscribed by the law of the requested nation, the requirement of double

---

[37] *See generally* Record, ECF No. 1-1.

[38] *In re Extradition of Chan Seong-I*, 346 F. Supp. 2d 1149, 1159 (D.N.M. 2004).

[39] *United States v. Levy*, 905 F.2d 326, 328 (10th Cir. 1990) (internal citations and quotations omitted).

[40] *Levy*, 905 F.2d at 328.

criminality is satisfied."[41] In making this determination, "the conduct at issue is analyzed without regard to the specific elements of the charged offense or the name of the offense in either country."[42] Similarly, extradition is not defeated if the requesting and requested countries require different levels of proof.[43]

The government states that the federal laws most readily attributable to Mr. Červenka's conduct are federal mail fraud and wire fraud laws. The federal mail fraud statute provides in relevant part,

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, for the purpose of executing such scheme or artifice or attempting so to do, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service, or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, any such matter or thing, shall be fined under this title or imprisoned not more than 20 years, or both.[44]

The federal wire fraud statute provides in relevant part,

---

[41] *Id.*

[42] *In re Extradition of Chan Seong-I*, 346 F. Supp. 2d at 1159 (citing *Collins v. Loisel*, 259 U.S. 309, 314 (1922); *Levy*, 905 F.2d at 328; *In re Extradition of Tang Yee-Chun*, 674 F. Supp. 1058 (S.D.N.Y. 1987)).

[43] *Levy*, 905 F.2d at 328.

[44] 18 U.S.C. § 1341.

> Whoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice, shall be fined under this title or imprisoned not more than 20 years, or both.[45]

Mr. Červenka argues that his convictions are not supported by evidence of an intent to defraud, again characterizing himself as an unsuccessful businessman who would be potentially subject to civil suits in the United States but not to criminal prosecution. As explained above, there is sufficient evidence to support a finding of probable cause as to the crimes for which extradition is sought—including evidence that Mr. Červenka acted with criminal intent. Mr. Červenka also urges the court to consider the definition of fraud on a creditor, found in Section 256. He contends the language does not require intent. The statute lists a variety of ways in which a person may frustrate the satisfaction of a creditor, including:

> (a) destroying, damaging, concealing, alienating, or making unusable part of his property; (b) fabricating or recognizing a non-existing right or claim; (c) representing his property as diminishing; or (d) refusing, in proceedings before a court, to fulfill his legal duty to make a statement on his property, or on property of a legal entity for which he is authorized to act, or by providing false or grossly distorted facts in such a statement . . .[46]

Written in the disjunctive, the statute lists a variety of methods to frustrate a creditor that require culpable conduct. The proper consideration, however, is not whether the Czech statutes and the United States statutes are similarly worded or identically applied; it is whether the extraditee's acts charged by the requesting country would constitute the commission of a crime in the requested country. They would.

---

[45] 18 U.S.C. § 1343.

[46] Wording of the Respective Criminal Law Provisions of the Czech Republic at 24, ECF No. 1-1.

As set forth by the government, a mail fraud conviction requires: (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of the mails to execute the scheme.[47] A wire fraud conviction requires: (1) a scheme or artifice to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, (2) an intent to defraud, and (3) use of interstate wire or radio communications to execute the scheme.[48]

As previously explained, there is probable cause to believe that Mr. Červenka engaged in a scheme or artifice to defraud those who lent him money or sold him goods and that he acted with criminal intent. These acts potentially would have required the use of the mail or interstate wire or radio communications. Of course, the third element is solely jurisdictional and is often not considered when addressing dual criminality.[49] Because Mr. Červenka's conduct would constitute the commission of a crime in the United States, dual criminality exists.

Because the undersigned is authorized to conduct this proceeding; the court has subject-matter jurisdiction over this action and personal jurisdiction over Mr. Červenka; the applicable treaty is in full force and effect; there is sufficient evidence to support a finding of probable cause as to each conviction for which extradition is sought; and because the crimes for which surrender is requested are covered by the applicable treaty, the court grants the government's request for a certificate of extraditability.

Accordingly,

---

[47] *United States v. Zander*, 794 F.3d 1220, 1226 (10th Cir. 2015).

[48] *United States v. Gallant*, 537 F. 3d 1202, 1228 (10th Cir. 2008).

[49] *See, e.g., In re Extradition of Chan Seong-I*, 346 F. Supp. at 1159 (finding that the court need not analyze the element of interstate wire communications because the treaty at issue specifically exempted these types of elements from consideration when assessing dual criminality).

**IT IS THEREFORE ORDERED** that the request for a certificate of extraditability (ECF No. 6) is granted. A certified copy of this Certificate of Extraditability and Order of Commitment and all transcripts from proceedings in this case shall be sent to the Secretary of State, to the attention of the Legal Adviser.

**IT IS FURTHER ORDERED** that Mr. Červenka shall remain in the custody of the United States Marshal pending final disposition of this matter by the Secretary of State and surrender to the designated agents of the Czech Republic.

**IT IS FURTHER ORDERED** that any personal property belonging to Mr. Červenka, seized at the time of his arrest, be returned to him at the time of his surrender to the representatives of the Government of the Czech Republic.

**IT IS SO ORDERED.**

Dated June 13, 2017, at Topeka, Kansas.

s/ K. Gary Sebelius  
K. Gary Sebelius  
U.S. Magistrate Judge